## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DERRICK MARTIN, | |
| Plaintiff, | Civil Action No. |
| v. | |
| LP ATLANTA, LLC d/b/a SIGNATURE HEALTHCARE OF BUCKHEAD, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiff Derrick Martin ("Plaintiff") files this Complaint against Defendant LP Atlanta, LLC d/b/a Signature HealthCARE of Buckhead ("Defendant"). Plaintiff alleges that Defendant violated the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (the "ADA") by (1) discriminatorily terminating his employment because of his disability, and (ii) failing to provide Plaintiff with a reasonable accommodation for his disability. Plaintiff seeks declaratory relief, lost wages and benefits, compensatory and punitive damages, interest, and attorneys' fees and costs.

Plaintiff shows the Court as follows:

1

## JURISDICTION AND VENUE

1.     This court has federal-question jurisdiction over Plaintiff's ADA claims, pursuant to 28 U.S.C. § 1331.

2.     Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 3.1(B), venue is proper in this Court because a substantial portion of the events giving rise to this action occurred in the Atlanta Division of the Northern District of Georgia, where Defendant employed Plaintiff.

## PARTIES

3.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; he submits himself to the jurisdiction of this court.

4.     Plaintiff was formerly employed by Defendant as the Assistant Director of Nursing from approximately June 10, 2022, until on or about August 22, 2022.

5.     Defendant is a Delaware limited-liability company that is registered to do business in the State of Georgia.

6.     Defendant may be served with process through its registered agent, "Corporation Service Company" at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7.     Defendant was an "employer" within the definition of the ADA at all relevant times.

8.     Plaintiff was Defendant's "employee" within the meaning the ADA at all relevant times.

## ADMINISTRATIVE EXHAUSTION

9.      Plaintiff has satisfied all administrative prerequisites for bringing his ADA claims in this Court.

10.     On September 8, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 410-2022-08621), in which he asserted his ADA claims against Defendant.

11.     On February 17, 2023, the EEOC issued the Notice of Right to Sue on Plaintiff's Charge.

12.     Plaintiff brings this suit within ninety (90) days of his receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

13.     Defendant provides live-in care and medical assistance, as well as rehabilitation services.

14.     Defendant formerly employed Plaintiff as the Assistant Director of Nursing from approximately June 10, 2022, until on or about August 22, 2022.

15.     At all relevant times, Plaintiff was an individual with a disability, to wit, Type II diabetes.

16.    Plaintiff was qualified to fulfill the essential functions of the Assistant Director of Nursing role with or without an accommodation.

17.    Throughout his employment, Defendant was aware that Plaintiff had Type II diabetes, which required him to carefully monitor his blood sugar levels and, as necessary, take insulin using an injector.  Plaintiff's disability was well-known to his coworkers, including management.

18.    More specifically, Plaintiff informed Defendant that his disability required active management, including during work hours, which management included ensuring that he ate regularly to avoid significant changes to his blood-sugar levels, and taking short breaks in his office so that he could privately inject insulin into his abdomen as required.

19.    Plaintiff's representation to Defendant that his disability required active management of his blood-sugar levels through, *inter alia*, insulin injections and breaks to eat, constituted a request for a reasonable accommodation under the ADA.

20.    Plaintiff received positive feedback about his performance throughout his employment, including in connection with an efficiency survey that he conducted while Defendant's Director of Nursing, Belinda Scott, was on vacation, which survey went well.

21.    In mid-August 2022, Plaintiff prepared an insulin injection in his office as required to manage his diabetes.  After he had prepared the injector and was about to use the same on his abdomen, as directed by his healthcare provider, a resident-patient knocked on his door, which he had closed for privacy.

22.    With the door closed, there was no visibility into Plaintiff's office. Plaintiff quickly completed the injection, readjusted his shirt, and opened the door to speak with the resident, who was seeking assistance with their adjustable bed, which was a non-urgent matter.

23.    While Plaintiff spoke with the resident, she noticed the used injector on his desk and asked what it was for.  Plaintiff explained that it was an insulin injector.

24.    On August 22, 2022, Plaintiff was unexpectedly called into a meeting with Defendant's: Director of Nursing, Belinda Scott; Human Resources Coordinator, Lashawn Nelson; outgoing Administrator, Loretta Barnes; and incoming Administrator, Carol Janes.

25.    Ms. Barnes stated that a resident had observed Plaintiff injecting himself with insulin in his office, which she claimed was a violation of company policy for which he was being terminated, effectively immediately.

26.    When Plaintiff attempted to discuss the alleged incident or the alleged policy that purportedly prevented him from taking insulin in the privacy of his office,

Director Scott cut off any further discussion about the alleged injection incident, the company policy Plaintiff was alleged to have violated, or his termination.

27.    Plaintiff was surprised by Defendant's reaction to his insulin use in light of Defendant's knowledge of his disability and need for insulin injections to manage the same.

28.    By terminating Plaintiff's employment because his required insulin use purportedly violated company policy, and by refusing to discuss the purported basis for his termination during the August 22, 2022 meeting despite Defendant's knowledge that Plaintiff need insulin because off his disability, Defendant violated the ADA by (i) discriminating against him because of his disability; and (ii) failing to provide a reasonable accommodation for his disability.

29.    Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under the ADA.

30.    Due to Defendant's violations of the ADA, Plaintiff has experienced lost compensation, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

## COUNT I
## Failure to Accommodate in Violation of the ADA

31.    At all relevant times, Plaintiff was an employee with Type II diabetes, a disability within the meaning of the ADA.

32.    At all relevant times, Plaintiff was qualified for the position of Assistant Director of Nursing with or without an accommodation.

33.    At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

34.    Throughout his employment, Defendant was aware that Plaintiff had Type II diabetes, which required him to carefully monitor his blood sugar levels and, as necessary, take insulin using an injector.  Plaintiff's disability was well-known to his coworkers, including management.

35.    Plaintiff's representation to Defendant that his disability required active management of his blood-sugar levels through, *inter alia*, insulin injections and breaks to eat, constituted a request for a reasonable accommodation under the ADA.

36.    On or about August 22, 2022, meeting with Director Scott, HR Coordinator Nelson, outgoing Administrator Barnes, and incoming Administrator Janes, Ms. Barnes expressly stated that Defendant was terminating Plaintiff because had injected himself with insulin, which Ms. Barnes stated was a violation of Defendant's policies.

37.     Further, when Plaintiff attempted to discuss the alleged incident underlying Defendant's decision to terminate him or the alleged policy that he was purported to have violated, Director Scott cut off any further discussion about the alleged injection incident, the company policy Plaintiff was alleged to have violated, or his termination.

38.     By terminating Plaintiff's employment because his insulin use in his private office allegedly violated Defendant's policies, and by failing to engage with Plaintiff when he sought to discuss the alleged incident or the policy cited by Defendant, Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation for his disability.

39.     In denying Plaintiff a reasonable accommodation for his disability, Defendant acted with malice and/or with reckless indifference with respect to his federally-protected rights under the ADA.

40.     As a result of Defendant's violations of the ADA, Plaintiff has incurred lost compensation, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

41.     Plaintiff seeks all available relief under the ADA, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT II
### Discriminatory Termination in Violation of the ADA

42.    At all relevant times, Plaintiff was an employee with Type II diabetes, a disability within the meaning of the ADA.

43.    At all relevant times, Defendant regarded Plaintiff as having a disability, as set forth in 42 U.S.C. § 12102(1)(C).

44.    At all relevant times, Plaintiff was qualified for the position of Assistant Director of Nursing with or without an accommodation.

45.    At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

46.    Throughout his employment, Defendant was aware that Plaintiff had Type II diabetes, which required him to carefully monitor his blood sugar levels and, as necessary, take insulin using an injector.  Plaintiff's disability was well-known to his coworkers, including management.

47.    Defendant violated the ADA by discriminating against Plaintiff by terminating his employment because of his disability and/or because Defendant regarded him as disabled.

48.    Specifically, during the August 22, 2022 meeting with Director Scott, HR Coordinator Nelson, outgoing Administrator Barnes, and incoming Administrator Janes, Ms. Barnes expressly stated that Defendant was terminating

Plaintiff because had injected himself the insulin Plaintiff needed because of his disability, which Ms. Barnes stated was a violation of Defendant's policies.

49.    When Plaintiff attempted to discuss the alleged incident underlying Defendant's decision to terminate him or the alleged policy that he was purported to have violated, Director Scott cut off any further discussion about the alleged injection incident, the company policy Plaintiff was alleged to have violated, or his termination.

50.    As a result of Defendant's violations of the ADA, Plaintiff has incurred lost compensation, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

51.    In discriminating against Plaintiff because of his disability, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under the ADA.

52.    Plaintiff seeks all available relief under the ADA, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)   A declaratory judgment that the practices of Defendant complained of herein are unlawful under the ADA;

b)   An award of his full lost wages and benefits;

c)   An award of compensatory and punitive damages in an amount to be determined by the jury;

d)   An award of prejudgment and post-judgment interest;

e)   An award of Plaintiff's attorneys' fees and costs; and

f)   All other equitable and other further relief as this Court deems just and proper.

Respectfully submitted, this 20th day of February 2023.

<div style="margin-left:50%">

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Tierra M. Monteiro
Georgia Bar No. 743224
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
tmonteiro@scottemploymentlaw.com

Counsel for Plaintiff

</div>